Walter DESHAZO *v.* STATE of Arkansas

CA CR 04-1001

237 S.W.3d 493

Court of Appeals of Arkansas
Opinion delivered June 21, 2006

*Kathy L. Hall*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Nicana Corinne Sherman*, Ass't Att'y Gen., for appellee.

LARRY D. VAUGHT, Judge. Appellant Walter "Tony" De-shazo appeals his conviction following a jury trial in Sevier County Circuit Court for possession of drug paraphernalia with intent to manufacture methamphetamine and possession of a controlled substance (methamphetamine). He was sentenced to eight years in prison on the paraphernalia charge with a fine of $15,000 and five years in prison on the possession of a controlled substance charge with a fine of $10,000, sentences to run consecutively. He argues on appeal that the trial court erred in denying his motion to suppress because the sheriff did not have probable cause to enter his home without a search warrant; that there was insufficient evidence to prove he was in possession of the drug paraphernalia with the requisite intent; and that there was insufficient evidence to prove that the amount of methamphetamine found was a "usable" amount. We find no error and affirm.

This case involves the search of a house and property owned by the estate of Marjorie Persson that was rented to appellant. Randall Wright, attorney for the estate, testified that appellant received a notice to vacate the premises on May 31, 2002. Mr. Wright then filed a complaint and notice of intent to issue a writ of possession against appellant on June 14, 2002. Mr. Wright stated

that he had a conversation with appellant on June 24, 2002, in which appellant indicated that he wanted to purchase the property from the estate. Mr. Wright stated that he sent several letters to appellant following this conversation; however, appellant never responded. Mr. Wright testified that on June 27, 2002, he requested that an Order for Immediate Possession and a Writ of Possession be issued and served on appellant.

Laurie Green, Circuit Clerk of Sevier County, testified regarding the civil filings in the unlawful detainer suit against appellant. She stated that an Order for Immediate Possession and a Writ of Possession were filed on June 27, 2002, but just the order was sent to appellant's house. She admitted that she did not have a copy of a return of service for the Writ of Possession.

On September 20, 2002, deputies from the Sevier County Sheriff's Office served an Order of Immediate Possession on appellant. Appellant responded by telling the officers that he hoped they did not have to return and drag him off the property. The Order of Immediate Possession stated that it was filed on June 27, 2002, that appellant had "failed to appear or file any objections to the issuance of a writ of immediate possession," and that "the Plaintiff [was] entitled to immediate possession of the premises; that the Clerk is directed to issue a writ of possession as directed by Ark. Code Ann. Sec. 18-60-307 (1987)." The officers told appellant that he had a week to vacate before they came to claim the premises.

On September 27, 2002, the officers returned to claim possession of the property. The doors were locked, and no one answered their knocks. Sheriff John Partain was in the process of contacting Mr. Wright regarding whether the officers should force entry into the house or wait on a key when Cindee Roberts appeared at the door. She told the officers that she had been asleep and had not heard their knocking. She then told the officers that appellant was not there, and she did not know where he was. Sheriff Partain told Cindee that she needed to find appellant. After she left, Sheriff Partain told his deputies to do a "protective sweep" outside of the house to make sure that appellant was not there. During this sweep, the officers discovered appellant's truck parked behind the house. Sheriff Partain then asked the officers to continue looking for appellant in the house, the basement, and outside. Sheriff Partain testified that he believed appellant had a violent history, wanted to secure any weapons that appellant could

get to, and needed to determine what type of possessions appellant had in the home for removal purposes. During this second sweep, the officers found weapons and what appeared to be drug paraphernalia in the house. Sheriff Partain immediately halted the search and sent for a warrant. The warrant was issued — based on the preliminary items found during the search of the house — and this evidence was used to convict appellant.

■ Preservation of appellant's right against double jeopardy requires that we consider appellant's challenge to the sufficiency of the evidence first even though it was not listed as his first point on appeal. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). In this case, appellant moved for directed verdict at the close of the State's case and then at the close of his case. Ordinarily, this would be sufficient to preserve the issue of sufficiency of the evidence for appellate purposes. However, as the State points out in its brief, appellant failed to renew his directed-verdict motion after the State's rebuttal testimony. Our procedure rules require that a motion for a directed verdict be brought at the "conclusion of the evidence presented by the prosecution and again at the close of the case . . . ." Ark. R. Crim. P. 33.1. In *King v. State*, 338 Ark. 591, 999 S.W.2d 183 (1999), our supreme court stated that "[c]lose of the case means close of the whole case, in other words, after the last piece of evidence has been received." *Id.* at 595, 999 S.W.2d at 185. "Even if a defendant renews his motion at the close of his case-in-chief, the requirement of the rule to renew the motion at the 'close of the case' obligates the defendant to renew the motion again at the close of any rebuttal case that the State may present in order to preserve the sufficiency issue for appeal." *Id.* at 595, 999 S.W.2d at 185 (citing *Rankin v. State*, 329 Ark. 379, 948 S.W.2d 347 (1997)). Because appellant did not renew his directed-verdict motion following the State's rebuttal testimony, his sufficiency arguments are not preserved for appeal and we will not reach the merits of his argument.

When reviewing the denial of a motion to suppress, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to a reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003).

Pursuant to Ark. Code Ann. § 18-60-307(a) (Repl. 2003), a landowner who seeks to have another party removed from property must file a complaint in circuit court and direct the sheriff to serve upon the named defendant a notice in the following form:

### "NOTICE OF INTENTION TO ISSUE WRIT OF POSSESSION"

You are hereby notified that the attached complaint in the above styled cause claims that you have been guilty of . . . [unlawful detainer] . . . and seeks to have a writ of possession directing the sheriff to deliver possession of the lands, tenements, or other possessions described in the complaint delivered to plaintiff. If, within five (5) days, excluding Sundays and legal holidays, from the date of service of this notice, you have not filed in the office of the circuit clerk of this county a written objection to the claims made against you by the plaintiff . . ., then a writ of possession shall forthwith issue from this office directed to the sheriff of this county and ordering him to remove you from possession of the property . . . . If you should file a written objection . . . within five (5) days, excluding Sundays and legal holidays, from the date of service of this notice, a hearing will be scheduled by the circuit court of this county to determine whether or not the writ of possession should issue as sought by the plaintiff.

The statute goes on to explain that if the defendant does not file an objection within the five-day period, the clerk of the circuit court "shall immediately issue a writ of possession directed to the sheriff commanding him or her to cause the possession of the property . . . to be delivered to the plaintiff without delay, which the sheriff shall thereupon execute in the manner described in § 18-60-310." Ark. Code Ann. § 18-60-307(b). Arkansas Code Annotated section 18-60-310 (Repl. 2003) requires the sheriff to notify the defendant of the writ by delivering a copy to the defendant or any person authorized to receive summons on behalf of the defendant. If within eight hours of receipt of the Writ of Possession, the sheriff cannot locate such a person at their normal place of residence, the sheriff may serve the writ by posting a copy conspicuously on the front door of the property described in the complaint. After twenty-four hours from either face-to-face delivery or door delivery, if the defendant remains in possession of the property, the sheriff "shall notify the plaintiff or his or her attorney of that fact and shall be provided with all labor and assistance required by him or her in removing the possessions and

belongings of the defendants from the affected property to a place of storage . . . ." Ark. Code Ann. § 18-60-310(c)(1).

In this case, the law enforcement officers never served appellant with a *Writ* of Possession as required by the statute. Instead, they served him with an *Order* for Immediate Possession. It is apparent from the statute, testimony, and documents themselves that there is a difference between an "order" and a "writ." The circuit clerk testified that, based on court records, an Order of Immediate Possession was signed by the judge and filed on June 27, 2002, and a Writ of Possession was also filed on that same day. The order was served on appellant on September 20, 2002, but the writ never was. The documents themselves illustrate that the judge issues the Order of Immediate Possession granting the property owner the right to repossess the property and that the order directs the court clerk to issue a writ. Therefore, for all practical purposes, the Order of Immediate Possession and the Writ of Possession accomplish the same thing — entitling the plaintiff to possession of the land.

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court recognized the good-faith exception to the exclusionary rule, a judicially created remedy designed to safeguard against future violations of Fourth Amendment rights. Noting that the purpose of the exclusionary rule was to deter police misconduct, the Court observed that:

> where the officer's conduct is objectively reasonable, excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.

*Leon*, 468 U.S. at 919–20 (quoting *Stone v. Powell*, 428 U.S. 465 (1976) (White, J., dissenting)). At issue in *Leon* was a defective search warrant, but the Court has since extended the good-faith exception to a warrantless search permitted by a state statute that was later ruled unconstitutional, *Illinois v. Krull*, 480 U.S. 340 (1987), and to a search incident to an arrest that was based on erroneous information, *Arizona v. Evans*, 514 U.S. 1 (1995). In these decisions, the Court has emphasized that the exclusionary rule should be applied only where the goal of deterrence can be achieved. Moreover, when a law enforcement officer inadvertently discovers evidence of a crime while

acting in his capacity as an officer in a civil action, he cannot be said to have conducted an illegal search and seizure. *Poage v. State*, 27 Ark. App. 108, 766 S.W.2d 622 (1989).

■ We hold that the trial court did not clearly err in finding that the sheriff in this case acted in good-faith reliance on a facially valid court order in executing the Order of Immediate Possession. The sheriff, relying upon a mandate from the court, executed an order granting immediate possession to the plaintiff. He was of the understanding that he had complied with the statutory requirements, and when he returned on September 27, 2002, he believed he had the legal right to repossess the property for the plaintiff. Moreover, the sheriff's actions in giving appellant a week to comply with the order — six days longer than the time period statutorily required — and in immediately halting the search once evidence of a criminal nature was found so as to secure a proper search warrant are illustrative of the sheriff's good-faith effort to comply with the order. Furthermore, based on the totality of the circumstances, we do not believe that suppressing the evidence in this case would serve the remedial purposes of the exclusionary rule.

Affirmed.

CRABTREE and BAKER, JJ., agree.